ROBERT T. KING *against* WILLIAM KING and STEPHEN MUNGER, Administrators of EARL KING.

A Justice of the Peace, being a judicial officer, must have his court or place of administering justice: and in order to the validity of an amicable judgment upon his docket, the party confessing the same must be before him and at his office.

The plaintiff in error, who was also the plaintiff below, sued out this writ of error to the Common Pleas of Erie county, to remove the record of a suit which originated upon a writ of *scire facias* to revive a judgment against *Earl King*, obtained and entered under the following circumstances.

An unsettled account existed between the plaintiff and defendant, and they, without any other authority than their own consent, called together three of their neighbours, to whom they agreed to refer their respective claims. After the parties had exhibited their accounts, on the one side and the other; in consequence of their conduct, one of the arbitrators proposed to separate, and alleged that the parties could settle amicably themselves. The parties then sat down and examined the accounts of each other, items on each side were agreed and objected to; it finally resulted in an agreement, that there should be a report of the arbitrators for $500 in favour of *Robert T. King*, against his father *Earl King*, $50 of which was to be paid in hand, and *Earl King* was to give a judgment upon the docket of *John M'Cord*, Esquire, a justice of the peace, who was also one of the three arbitrators present, for $450 with stay of execution till the death of the defendant *Earl King*. This arrangement took place at the house of *Earl King*, where *John M'Cord*, Esquire,

(Robert T. King *v.* Wm. King and Stephen Munger, Adm'rs of Earl King.)

the justice made a note in writing of the amount agreed upon to be entered as a judgment upon his docket, and shewed it to the defendant, who was satisfied. The justice then returned home, and entered the judgment upon his docket, as agreed upon by the parties. A few days afterwards, *Earl King* called upon the justice to know if the judgment would carry interest, and upon being told that it would, he was dissatisfied with it.—A transcript of this judgment was entered upon the records of the Common Pleas of the county of Erie, was burnt with the court house, and its place supplied by a new transcript, entered by authority of the act of assembly for that purpose: and to revive which, and shew cause why execution should not issue, after the death of *Earl King*, this *scire facias* was issued to *February Term*, 1827. The defendant's pleas were *nul tiel record*—that the judgment was obtained by fraud—and payment, with leave to give the special matter in evidence.—The plaintiff replied *non solvit*—and no fraud.

By a suggestion of the court, the defendants withdrew the plea of *nul tiel record;* the "plaintiff's counsel agreeing to the admission of parol evidence on the plea of fraud."

Much evidence was given on one side and the other, as to the mental capacity of the defendant, *Earl King*, to attend to his own business, at the time he agreed to the amount of the report which the arbitrators should make: all which was submitted by the court to the jury as a matter of fact.

The court (SHIPPEN *President*,) in their charge to the jury on the subject of the alleged fraud, in obtaining the judgment, said, " that no evidence of, or security for a debt could be framed or taken, which would preclude an inquiry into the transaction if fraudulent; and that this rule applied to the cause now trying; for if the jury believe that the judgment was obtained by fraud, in consequence of the mental incapacity of the defendant, it is void. That a confession of judgment of this kind, before a justice of the peace, for so large a sum of money, is dangerous; for the only place and manner in which a judgment entered for a sum above a hundred dollars, before a justice and a transcript thereof filed, could be inquired into, would be on a *scire facias* to revive; when the question might be met—that there was no chance of relief for the defendant, unless the plaintiff is under the necessity of issuing a *scire facias*, and then the question might be met. That as the parties did not *appear* before the justice to enter the judgment, and as the justice merely took the admission of defendant, as to the amount of this judgment, at defendant's house, where he was called as an arbitrator, and entered it in his docket when he went home, in such a manner as to carry interest from the date, when it does not appear so intended by *Earl King*, it is not a good, binding judgment under the act of assembly."

(Robert T. King *v.* Wm. King and Stephen Munger, Adm'rs of Earl King.)

The jury returned the following verdict—"That they find for defendants, on the ground of the judgment being void and illegal, and not on the plea of fraud."

In this court the following errors were assigned:

1st. The plea of fraud was impertinent and illegal.

2d. The court erred in charging the jury, that the merits of the judgment could be investigated, and the judgment annulled, on the ground of fraud, in the *scire facias* suit.

3d. The court erred in charging the jury, that the judgment was not a good and binding one under the act of assembly.

4th. The jury having found that the judgment before the justice was not obtained by fraud, could not find by their verdict that it was illegal and void.

*Selden* for plaintiff in error.

The only question to be decided is, whether this judgment is illegal or not. By reference to the 14th section of the act of 1810, (*Purdon's Digest,*) it will be seen, that the proceedings in obtaining this judgment, have strictly conformed to the provisions of that act; and what it was that induced the court to instruct the jury that this was not a valid and binding judgment, is difficult to determine. The merits of the original judgment cannot be enquired into on a plea to a *scire facias:*—the cases in which judgments have been overhauled, is for something occurring since the entry of the judgment. I had thought that the adjudication of the case of *Benton* v. *Burgot,* 10 *Serg. & Rawle,* 240, was decisive. There the plaintiff replied to the first plea, that there is such a record, and demurred to *the second,* viz: that it was obtained by fraud, &c. The court overruled the *demurrer,* but this court on a writ of error said, that evidence of fraud, imposition, mistake, and want of consideration, is bad on demurrer. *Nul tiel record* is the only plea of which the defendant can avail himself. Also the case of *Cardesa* v. *Humes,* 5 *Serg. & Rawle,* 65, in which the court say "that under no circumstances can the merits of the original judgment be inquired into by the defendant, on a *scire facias,* so as to enable him to set up a defence which he might have used in the original suit." The court may open the judgment, but in no other way can their equitable power be interposed.

The objection raised by the court below, was that the judgment was not entered at the justice's office; he took a note of it; he showed it to *Earl King;* he was satisfied. The court further say, it was not entered according to the intent of the parties; we have the certificate of the justice that it was. It then was a mistake as to interest; that mistake will not invalidate the judgment.

*Sill* for defendant in error, was requested by the court to confine his remarks to the third error assigned.

3

(Robert T. King *v.* Wm. King and Stephen Munger, Adm'rs of Earl King.)

By the act of assembly under which this judgment is entered, a limited authority is given to justices of the peace, and it must be strictly pursued; and a judgment entered by authority of that act, and not in conformity with its provisions, is void. *Alberty* v. *Dawson,* 1 *Bin.* 106. *Brenneman* v. *Greenewalt,* 1 *Serg. & Rawle,* 30. The act provides that the parties shall voluntarily appear before him for the purpose, when the judgment is to be entered for a sum exceeding one hundred dollars;—in this case the parties did not appear before him at a place where he had the means of doing those things which the act requires of him; and it would be unsafe and injudicious, to render valid the proceedings of a justice, which had been subjected to the uncertainty of a treacherous memory. So careful has the legislature been to guard against looseness and carelesness, in the administration of the law, that it has been provided that a justice shall not keep his *stated office* in a tavern. The facts exhibit the danger of such looseness, as has been practised in this case. The justice either forgot or mistook, the terms upon which the judgment was agreed to by *Earl King;* for it was not his intention that the judgment should carry interest during his life, or be satisfied by any thing but property when he was dead.

A misdirection of the court upon matters of fact, is not assignable for error. *Rouvert* v. *Patten,* 12 *Serg. & Rawle,* 253. *Long* v. *Ramsey,* 1 *Serg. & Rawle,* 72.

*Banks* on the same side, whom the court declined to hear.

*Derrickson,* in reply.

On the plaintiff's consenting to withdraw the plea of *nul tiel record,* and the plea of fraud being entered, it was not intended by either party, or contemplated by the court, that the regularity or validity of the judgment as entered by the justice, should be inquired into, but merely the consideration of that judgment; as it was alleged that the plaintiff had taken advantage of the defendant, then an aged man, and in his dotage: which fact, if it should be established to the satisfaction of the jury, it was agreed under the plea of fraud, should authorize them in finding for the defendants. But even if, from the pleadings, it should be considered that it was intended to submit the regularity of the judgment before the justice to the jury, for them to pass upon, their privileges and duties were infringed upon by the court, when they stated to the jury in positive terms, that the judgment was void and illegal; which must have been on an assumption of facts, of which the court was not competent to judge. If however, the court below was authorized from an inspection of the record, in saying that the judgment was void and illegal, then it was the province of this court to examine and ascertain, whether there was any thing to justify a decision of the kind. The principle of law is established and undeniable, that the court and the jury have each their respective duties, the one to decide questions of law, and the

(Robert T. King *v.* Wm. King and Stephen Munger, Adm'rs of Earl King.)

other those of fact: but here it was a difficult matter to say, whether this had been adhered to, for the court can only judge from inspection, and not from parol evidence, whether there is a record. And although there was no denial of the record, the court say there was none; and the jury after finding that there was *no fraud*, assume the prerogative of the court's power, and in its language, respond that the judgment was void and illegal; which, if the fact was so, there was no necessity of a finding by the jury at all.

By the act of 1810, under which this judgment was entered, justices of the peace are authorized to enter judgments for any amount, when confessed by the parties. Here it does not appear that the parties appeared before the justice at his office, to enter the judgment, but that which was all material to the rendering of one, viz: the agreement to the sum, the stay of execution, the consent of the defendant, and his directions to the justice, then, within his district, to enter the judgment; and the subsequent and actual entry by the justice, was fully complied with: and any evidence there was, that the judgment was not to be paid in money, but stock, and no interest to accrue in the mean time, and declarations of the defendant, subsequent to the entry of the judgment, could have no effect to defeat the rights of the plaintiff: and even if the facts had been so, it was making the justice a party to the fraudulent transaction;—as fraudulent it must have been in him, to enter a judgment contrary to the parties' agreement; and would have justified the jury in finding a verdict for the defendant under the plea of fraud.

The opinion of the court was delivered by

Gibson, C. J.—The irregularity of inquiring into the validity of the original judgment in the trial of the *scire facias*, was waived by the plaintiff, who, in agreeing to the admission of parol evidence of the alleged fraud, consented to a trial on the merits; and as the jury have negatived the fraud, the only assignment of error that can be urged, is that which relates to the direction with respect to the objection depending upon legal grounds.  Evidence having been given that the parties being at the house of a third person, and before arbitrators, of whom the justice was one, compromised their dispute, the defendant agreeing to confess judgment for a sum certain; and that the justice having, with the assent of the defendant, made a memorandum of the terms, entered it on his docket at his return home; the court instructed the jury that a judgment thus rendered, is illegal and invalid.

A court is defined to be a *place* where justice is judicially administered; and a justice of the peace, being a judicial officer, must necessarily have his court or place of administering justice.  That the matter has been so regarded by the legislature, is clear from the act of assembly by which he is forbidden to keep his "stated

office" in a tavern. It is difficult to conceive of the office of a judge, without at the same time, associating with it the idea of a place for the performance of its duties. The judgment was however actually rendered at the justice's office. But were the parties before him there? That is not pretended: but, it is said, the confession of the defendant was received when they were actually before him. That brings the argument back to the point from which it started, the receiving of the confession being as much a judicial act as the recording of it. But it is said the justice acted under a previous authority. It has been determined, however, that a warrant of attorney, which is quite as operative as a parol authority, is altogether insufficient. The act of assembly which gives him a qualified jurisdiction, *requires the parties to be before him;* and the abuses that might otherwise be practised, are sufficiently obvious to require him to be held to the letter of his authority. In the instance before us, the defendant disputed the correctness of the entry at the moment it was shown to him. Had he been present when it was made, there would have either been no cause or else no room for cavil.

The judgment below is therefore to be affirmed; but the effect of it is not so easily determined. The verdict has not disposed of the demand, but merely of the original judgment. By agreeing to put this matter in issue on the trial of the *scire facias,* the parties have created difficulties which perhaps they did not anticipate. If the proper judgment on the verdict be, that the original judgment be reversed or vacated, then the *scire facias* is in substance a writ of error on the part of the defendant, who in contemplation of law demands nothing by the writ; and in giving effect to the agreement of the parties, I am unable to see how we can escape from giving it this preposterous effect. I am not, even yet, certain that we ought not to reverse it for the irregularity, and leave the defendant to start a second time from the proper point, whence his course would be a plain one. A transcript entered on the docket of the common pleas, is, as regards real estate, virtually a judgment of that court, (*Brannan* v. *Kelley,* 8 *Serg. & Rawle,* 479.) consequently it may be set aside on motion, with or without an issue, where it has been obtained surreptitiously; or it may be only opened to let the party into a defence when he has missed his time either by accident or mistake; a practice extremely beneficial and founded on the chancery powers which our courts are in the daily habit of exercising. The matters however which constitute the defendant's title to relief, must have existed previous to, or at the time of rendering the judgment. If they be subsequent, the court will not interfere in a summary way, further than to stay the execution, because they may be pleaded to a *scire facias,* which if it be necessary, the plaintiff will be ordered to bring. A neglect of this distinction, sometimes produces confusion and inconvenience, and at all times evinces slovenliness of practice. Here the matter complained of, existed at the time of entering the

(Robert T. King *v.* Wm. King and Stephen Munger, Adm'rs of Earl King.)

judgment, consequently the proper course was an application to have the judgment set aside; but as the defendant has succeeded by an irregular course, adopted it would seem by agreement, he is entitled only to the advantages that might have been obtained in a regular way. The original judgment will therefore not stand in the way of a fresh action.

Judgment affirmed.